## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARIBETH BROOKE DETTMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 17-2296-JWL |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying child's insurance benefits, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff argues that the Administrative Law Judge (ALJ) erred by failing to consider whether Plaintiff's condition medically equals § 12.05C of the listing for mental disorders and by accepting vocational expert testimony which is inconsistent with the

<u>Dictionary of Occupational Titles</u> (DOT) and the policies of the Social Security Administration (SSA). Finally, she argues that the ALJ's residual functional capacity (RFC) assessment is not supported by the evidence because he erred in evaluating the opinion evidence. She seeks reversal and remand "with directions to grant her claims for disability insurance benefits and supplemental security income benefits." (Pl. Br. 37).

The court's review is guided by the Act. <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform

3

her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II.    Step Three Determination

Plaintiff argues that the ALJ erred because he did not consider whether Plaintiff's mental impairment medically equals Listing 12.05C of the listing of mental disorders. (Pl. Br. 28). Plaintiff cites two cases from the Eighth Circuit for the proposition that a case should be remanded where the ALJ fails to mention, or disregards, the Program Operations Manual System (POMS) guideline for determining medical equivalence to Listing 12.05C. Id. at 29 (citing Hesseltine v. Colvin, 800 F.3d 461, 466 (8th Cir. 2015); and Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003); and POMS DI 24515.056, available online at: https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056; effective 9/13/12-present) (last visited July 2, 2018). The Commissioner argues that the Eighth

Circuit "cases have no authority in the Tenth Circuit," and that contrary to Plaintiff's argument, the ALJ specifically determined Plaintiff's mental impairments did not meet or medically equal any Listed mental disorder. (Comm'r Br. 5-6). In her Reply Brief, Plaintiff argues that "the ALJ did not consider Listing 12.05C except to the extent he mentioned the B criteria and C criteria of 12.04 or 12.06." (Reply 2) (citing R. 928-29).

### A.    Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If Plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience, but the ALJ will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. §§ 404.1526(c), 416.926(c).

## B.    The ALJ's Findings Regarding Mental Listings

The ALJ found that Plaintiff has severe mental impairments of borderline intellectual functioning, attention deficit hyperactivity disorder, oppositional defiant disorder, cognitive disorders, affective disorders, and anxiety disorders. (R. 927). He

found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 928) (bolding omitted). Regarding the Mental Disorders in Section 12.00 of the Listings, the ALJ explained:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of any impairment listed in section 12.00 of Appendix 1. In making this finding, the undersigned has considered whether the paragraph B criteria are satisfied. To satisfy the paragraph B criteria, the mental impairments must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning. The four areas of mental functioning are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. An extreme limitation is an inability to function in the area independently, appropriately, effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function in the area independently, appropriately, effectively, and on a sustained basis.

(R. 928).

The ALJ went on to explain that he found Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting, or managing oneself. (R. 928-29). He found that the paragraph B criteria of the mental listings are not satisfied because there is neither one extreme limitation nor two marked limitations, and the paragraph C criteria are not satisfied because the evidence does not establish that Plaintiff has only marginal adjustment. Id. at 929. Finally, he noted "that no State agency psychological consultant concluded that a mental listing is medically equaled." Id.

### C. Analysis

The Listings for Mental Disorders were changed effective January 17, 2017. 81 Fed. Reg. 66,138 (Sept. 26, 2016); see also 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00 (2017). As relevant here, Plaintiff's borderline intellectual functioning is evaluated under Listing 12.11, "neurodevelopmental disorder," 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00B9b ("Examples of disorders that we evaluate in this category include … borderline intellectual functioning"); and Plaintiff's anxiety disorder is evaluated under Listing 12.06, "anxiety and obsessive-compulsive disorders." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00B5b. Listing 12.05, "intellectual disorder," on the other hand "may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as 'mental retardation.'" 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00B4b. The regulations specifically note that "[t]his category [(Listing 12.05)] does not include the mental disorders that we evaluate under … neurodevelopmental disorders (12.11)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00B4c.

Listing 12.11 has two paragraphs--A and B--and to meet or equal that Listing, the mental impairment "must satisfy the requirements of both paragraphs A and B." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A2. Listing 12.06 has three paragraphs--A, B, and C--and the mental impairment "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A2. Paragraph B of both Listing 12.06 and Listing 12.11 require evaluation of each of the four mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or

manage oneself, and the paragraph B criteria are only met, as the ALJ explained when Plaintiff's mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A2b.

The paragraph C criteria of Listing 12.06 require a mental disorder that is "serious and persistent," "medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s)" that diminishes the symptoms and signs of the claimant's mental disorder, and "only marginal adjustment." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00G2a, b, and c.

The explanation above illuminates the ALJ's consideration of Plaintiff's mental impairments. His explanation that the paragraph B criteria are not met demonstrates that Listing 12.11 cannot be met and that one possible combination of criteria in Listing 12.06 cannot be met. His explanation that the Paragraph C criteria are not met eliminates the other possible combination of criteria for Listing 12.06, and confirms that Listing 12.06 cannot be met.

Plaintiff's argument that Listing 12.05C is medically equaled, misunderstands the current listing of Mental Disorders, because Listing 12.05 no longer has a paragraph C. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A3. Current Listing 12.05 states:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:
A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05.

Of the two paragraphs in the current Listing, § 12.05B is the relevant Listing here because Listing 12.05A1 requires the "cognitive inability to function at a level required to participate in standardized testing of intellectual functioning," whereas Plaintiff

participated in standardized testing of intellectual functioning in December of 2011, resulting in a full scale IQ score of 73, verbal comprehension of 78, perceptual reasoning of 75, working memory of 71, processing speed of 86, and general ability of 74. (R. 542) (cited in the decision at R. 933). Almost one year later, in November 2012, Plaintiff was once again tested, resulting in a full scale score of 78, verbal comprehension of 87, perceptual reasoning of 81, processing speed of 84, and working memory of 74. (R. 1266) (cited in decision at R. 933).

The current listing contemplates a range of scores, and can be met with a "full scale (or comparable) IQ score of 70 or below," 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05B1a, or a "full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05B1b. However, the record contains no scores of 70 or below. Therefore, the ALJ is correct that Plaintiff's condition does not, at least, <u>meet</u> either the current or the former Listing.

Plaintiff argues that the ALJ should have considered whether her condition medically equals Listing 12.05, but notably, she does not argue that her condition in fact equals that Listing. This distinction is significant to the court's resolution of this issue. The ALJ in this case specifically found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of any impairment listed in section 12.00 of Appendix 1." (R. 928). Despite that specific finding, Plaintiff argues that the ALJ did not consider Listing 12.05. This court's general practice, which it

sees no reason to depart from here, is to take an ALJ at his word when he declares that he

has considered a matter. <u>Hackett</u>, 395 F.3d at 1172-73 (citing <u>United States v. Kelley</u>,

359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors

before imposing prison time for probation violation, but court need only say that it has

done so); <u>Andrews v. Deland</u>, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look

behind a district court's express statement that it engaged in a <u>de novo</u> review of the

record")).

The requirement for an ALJ to <u>consider</u> an issue does not mean that he must

<u>discuss</u> that issue in his decision. Such a rule would be unworkable, would expand the

length of Social Security decisions immeasurably, and would make an already ponderous

process unwieldy. Therefore, when an ALJ says he has considered a matter, this court

will take him at his word unless there is a reason based in the record to find otherwise.

An argument, or record evidence, that Plaintiff's condition medically equals Listing

12.05 would be such a reason in this case, but Plaintiff does not make that argument, and

the court does not find such evidence. The ALJ here discussed the new listings of mental

disorders, he said he considered whether Plaintiff's condition medically equals such a

disorder, and he noted that no consultant found a Listing equaled. Plaintiff has shown no

reason to find otherwise, and the court finds no error in the ALJ's consideration.

## III.     Vocational Expert Testimony

Plaintiff makes two arguments that the ALJ erroneously relied on VE testimony in

this case. First, she argues that light jobs require the ability to stand or walk about six

12

hours in a workday, that the ALJ found Plaintiff can walk or stand for only four hours in a workday, but that nonetheless, the VE testified that Plaintiff would be able to perform three representative jobs in the economy, all of which are light jobs. She argues, therefore, that she cannot perform light jobs and it was error for the ALJ to accept the VE testimony that she can do so. The Commissioner argues that the ALJ found Plaintiff can "stand for four hours a day and also walk for four hours a day, for a total of eight hours in a day—in addition to whatever time she could sit." (Comm'r Br. 9). She argues:

> Because the Commissioner's guidance does not separate these activities, and because the ALJ found Plaintiff can stand and walk for a combined total of eight hours in a day, she can perform light work (see Tr. 930). To determine otherwise would require the Court to find, based on no evidence, that both the ALJ and the vocational expert, two individuals who are experts in the terminology used in the Social Security disability programs, would ignore the Commissioner's definitions of these terms and reach conclusions precluded by the regulations.

Id. In her Reply Brief, Plaintiff argues that the ALJ did not find an ability to stand and walk for four hours each in a workday, but that she could stand or walk four hours total in a workday, and light work requires the ability to stand or walk six hours total in a work day. (Reply 2-3). The court disagrees with both Plaintiff and the Commissioner, and finds no error in the ALJ's consideration of the VE's testimony regarding light work.

The regulations define "Light work:"

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be

considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b). Although the Commissioner's policies assume that the full range of light work requires the ability to sit for approximately six hours in a workday and to stand and/or walk for approximately six hours in a workday, Soc. Sec. Ruling (SSR) 83-10, 1983 WL 31251, *5-6 (Jan. 1, 1983) ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."), the definition of light work quoted above recognizes that light work may require either "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Here, the ALJ did not find that Plaintiff can perform the full range of light work-- or even a wide range of light work. Rather, he found that she can "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can … stand or walk for 4 hours in an 8-hour workday" and "can push and pull within the limits for lifting and carrying" (among other exceptions). (R. 930) (emphasis added) (bolding omitted). These are precisely the limitations the ALJ provided in his first hypothetical question to the VE, to which the VE responded that such a hypothetical person would be able to perform the representative work of which the ALJ found Plaintiff is capable--an inserting machine operator, a photocopy machine operator, and a bench assembler. Compare (R. 981-82) with (R. 930, 941). Thus, although Plaintiff is unable to perform the full range

14

of light work, the VE testified that she is able to perform a limited range of light work requiring only the ability to walk or stand for a total of four hours in a workday.

And this is precisely the role of a VE in providing vocational opinion to the ALJ. SSR 83-12 explains:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access [sic (assess?)] its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious.

> Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops. Vocational experts may testify for this purpose at the hearing and appeals levels. In this PPS [(Program Policy Statement)], the term vocational specialist (VS) describes all vocational resource personnel.

1983 WL 31253, at *2 (Jan. 1, 1983). Plaintiff has not shown that the representative light jobs testified to by the VE and relied upon by the ALJ require walking or standing more than four hours total in an eight-hour workday.

Plaintiff's second argument is that SSR 00-4p requires the ALJ to provide a reasonable explanation for any conflict between the VE testimony and the DOT, but that there are such conflicts here which the ALJ did not resolve. This is so in Plaintiff's view

because the ALJ found that Plaintiff "should not do fast paced assembly line ... job duties," and "should work in a socially isolated type of work environment" (R. 930), but the job of a photocopy machine operator is not socially isolated because it requires the operator to receive payment for copies from the public, and the job of a bench assembler involves fast paced assembly line job duties because it is on an assembly line. (Pl. Br. 31). The Commissioner responds that the DOT description of the job of a photocopy machine operator provides that public interaction is not significant, and states only that the duties <u>may</u> involve taking payment for copies. (Comm'r Br. 10). She argues that the DOT description of a bench assembler job does not state that it involves assembly line work. <u>Id.</u>

As Plaintiff suggests, the Commissioner published SSR 00-4p, effective December 4, 2000. West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp. 2017). In SSR 00-4p, the Commissioner established a policy interpretation for the use of VE testimony along with "Other Reliable Occupational Information in Disability Decisions." <u>Id.</u> at 243. In the ruling, the Commissioner placed two duties on the ALJ. First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the Dictionary of Occupational Titles (DOT), <u>including its companion publication</u>, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." <u>Id.</u> (emphasis added).

Second, the ALJ was given the duty to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." <u>Id.</u> Ruling 00-4p places the

affirmative responsibility on the ALJ to "[a]sk the VE ... if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, ... [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

The problem with Plaintiff's argument is that in accordance with SSR 00-4p the ALJ asked the VE if her testimony was consistent with the DOT and the SCO and she testified that it was. (R. 987-88). Moreover, there are no conflicts between the VE testimony or the ALJ's RFC assessment and the DOT--apparent or otherwise. Plaintiff ignores the complete RFC assessed by the ALJ and included in the hypothetical question to the VE, and isolates information to create an apparent conflict.

The ALJ provided extensive explanation regarding Plaintiff's ability to interact with coworkers, supervisors, and the public. He found that "[s]he can have occasional contact with coworkers, supervisors, and the general public. She should not work with the general public as a primary job duty. She should not do teamwork types of job duties. She should work in a socially isolated type of work environment at moderate or office noise levels." (R. 930). In context and in light of the DOT, these limitations are consistent with the VE's testimony that Plaintiff can perform the job of a photocopy machine operator. As the Commissioner points out the job description of a photocopy machine operator states only that she "may receive payment for duplicate copies," whereas it provides a number of duties which do not use such permissive language. DICOT 207.685-014, 1991 WL 671745 ("Tends duplicating machine ... Places original

… Places blank paper … Sets control switch … Presses button"). Moreover, even if receiving payment were <u>required</u> in such a job, that is not inconsistent with not working with the general public as a <u>primary</u> job duty, <u>occasional</u> contact with the general public, and no <u>teamwork</u> job duties. This understanding is confirmed by the fact that the DOT job description specifies that working with people in the job is "[n]ot significant." <u>Id.</u>

The job description of bench assembler says nothing whatsoever about an assembly line. DICOT 706.684-042, 1991 WL 679055. The VE testified that such a job is consistent with the limitation to no fast paced assembly line or piece work types of job duties, and Plaintiff cites no authority beyond her apparent belief that <u>bench</u> assembly must be done on a fast paced assembly <u>line</u>. This is not error. Plaintiff has simply shown no inconsistency.

## IV.    Opinion Evidence

In her final argument, Plaintiff asserts that substantial evidence does not support the RFC assessed because the ALJ erred in weighing the opinion evidence. (Pl. Br. 33-37). Primarily, she complains that the ALJ erred in weighing the treating source opinion of Dr. Graham, arguing that the ALJ committed the same errors in weighing that opinion as the district court reviewing the first decision found the ALJ in that case committed. She argues that this ALJ accorded significant weight to Dr. Graham's opinion that Plaintiff needed a low stress, low pressure job, but erroneously failed to include that limitation in the RFC assessed. She also argues that he provided insufficient rationale to reject Dr. Graham's opinion that Plaintiff needed accommodation in the number of hours

worked, that he did not accord appropriate deference to Dr. Graham's opinion, and he did not consider the regulatory factors for evaluating a medical opinion.

In rapid succession and in but two paragraphs, Plaintiff argues that the ALJ erred; in failing to include Dr. Helling's opinion that Plaintiff works best in a structured environment, and in rejecting Dr. Stiers's opinion as obsolete. (Pl. Br. 36). Finally, in the last paragraph of her argument, Plaintiff argues that the opinions of her former employers, of Ms. Porter and Ms. Rogar, and of Drs. Stiers, Gaffney, Helling, Kanukuntla, Graham, and Kurylo confirm and support the conclusion that Plaintiff is disabled and unable to perform substantial gainful activity on an ongoing basis. Id. at 36-37.

The Commissioner argues that the ALJ's assessment of limitations to no fast paced work, to only simple repetitive work instructions and tasks at an SVP (Specific Vocational Preparation) 2 level, only occasional social interaction, not working with the public as a primary job duty, no teamwork jobs, a socially isolated environment with limited noise levels, no flashing lights, and only oral instructions all account for Dr. Graham's opinion regarding the need for a low stress, low pressure job. (Comm'r Br. 5-6). She argues that the ALJ provided a sufficient basis to reject the opinion that Plaintiff needs an accommodation in the number of hours worked because Dr. Graham provided no basis for that opinion in the medical evidence. Id. at 6-7. She argues that the ALJ adequately addressed the opinions of Dr. Helling and Dr. Stiers. Id. at 7-8. Finally, she

notes that the ALJ discounted the opinions of Plaintiff's former employers, because she successfully worked for eight years after she worked for those employers.  Id. at 8.

In her Reply Brief, Plaintiff argues that the cases relied upon by the Commissioner do not address low stress and low pressure, and reiterates her arguments that the opinion evidence supports her allegations she is unable to sustain full-time work.

## A.    Standard for Evaluating Opinion Evidence

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[1] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017).  A physician or psychologist who has treated a patient frequently

---

[1] The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and h[er] opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2017) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

The regulations require that the Commissioner consider all of the relevant evidence she receives when deciding the question of disability. 20 C.F.R. §§ 404.1527(b), 416.927(b). Recognizing that relevant evidence includes opinions from individuals who are not "acceptable medical sources," the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2017). That Ruling explains how the Agency is to consider three types of such opinions: opinions from other medical sources who are not "acceptable medical sources," opinions from non-medical sources who have seen the individual in their professional capacity, and opinions from non-medical sources who have not seen the individual in a professional capacity--such as relatives, friends, neighbors, and employers. Id. at 332-33. The Ruling explains that each type of these opinions will be evaluated using the regulatory factors for weighing medical opinions, but specifically cautions that "[n]ot every factor for weighing opinion evidence will apply in every case." Id. at 332.

> The Ruling suggests factors which may be appropriately considered in such cases:
>
> Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.
>
> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration

of the probative value of the opinions and a weighing of all the evidence in that particular case.

…

The evaluation of an opinion from a "non-medical source" who has seen the individual in his or her professional capacity depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

…

In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

Id. at 332.

Finally, In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each lay witness's opinion when the written decision reflects that the ALJ considered that opinion. Blea v. Barnhart, 466 F.3d 903, 914-15 (10th Cir. 2006); Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court determined "that the ALJ

considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding the testimony. Id. (emphasis added). Ten years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party lay opinion if the written decision reflects that the ALJ considered it. Blea, 466 F.3d at 915. The Blea court noted, however, that in that case "the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all 'clear that the ALJ considered [Mrs. Blea's] testimony in making his decision.'" Id. (quoting Adams, 93 F.3d at 715).

## B. The ALJ's Consideration of the Opinion Evidence

The court begins, as it must with the ALJ's evaluation of the opinion evidence. He made an extensive and particularly thorough examination and explanation of the opinion evidence in this case. (R. 934-39). He gave no weight to the lay opinion of L. Cobbins, the intake person at the local Social Security office who opined that Plaintiff had difficulty with understanding and coherency, appeared anxious "like she was trying hard to organize her words," talked like she was "hyper," struggled writing the date, and "wrote 2010[,] but when I asked her to make it 2011 she needed help from her dad." (R. 319). He discounted this opinion because it was from a one-time observer, not a source with medical or vocational training, the observer had no personal knowledge of Plaintiff and had not observed her for a longer period, because other sources such as the medical

record or Plaintiff's mother are in a better position to assess Plaintiff's condition, and because Plaintiff had been able to perform her retail clerk job at Target for a number of years. (R. 934-35). The ALJ accorded little weight to the employer statements from Acura and the University of Kansas Hospital because "she was younger at the time," "this was some of her first employment," and "[s]ince then, she has successfully worked at Target for about eight years." (R. 935).

The ALJ discounted Dr. Gaffney's opinion because it "is not consistent with the medical evidence from psychiatrist, Dr. Helling," and accorded greater weight to Dr. Helling's opinion that Plaintiff continued to work without difficulty and "worked best in a structured environment." Id. He accorded some weight to the opinions of the state agency psychologists, Dr. Adams and Dr. Maxfield, but discounted those opinions because there had been a change in the SSA's methods of analysis of mental impairments--as discussed above--after their opinions were formulated, and because more recent additional evidence had been received. Id.

He accorded no weight to the opinion of Ms. Dowma, Plaintiff's physical therapist, because she is not qualified to diagnose the medical impairments she diagnosed. He found that "[a]lthough she suggested it would be 'helpful' for the claimant to not stand over 4 hours at one time, and to have some sitting and walking components to her work, she did not state that the claimant was unable to work," and the limitations she suggested would not be disabling for Plaintiff. Id. He also discounted the opinion of Dr. Gaffney and Ms. Dowma that Plaintiff's standing and walking were

limited because it was not supported by objective testing to confirm radicular impairment or by their findings on examination. Id. at 935-36.

The ALJ accorded significant weight to the report of Dr. Hughey, who examined the Plaintiff, and accorded that opinion more weight than the opinion of Dr. Parsons, the state agency medical consultant, who reviewed the record at the reconsideration level. He accorded no weight to Dr. Kanukuntla's opinion because the opinion that Plaintiff can work only five hours a day has no basis in the doctor's therapy notes, he cited no testing, he provided no functional limitation useful in an RFC assessment, he did not account for Plaintiff's full-time work at Target, and he made vocational assumptions he is not qualified too make. Id. at 936.

The ALJ accorded significant weight to Dr. Graham's opinion that Plaintiff should work in low stress, low pressure jobs, but little weight to her opinion that Plaintiff might need accommodation in hours of work, because the evidence indicates Target does not give out information on employees, and Dr. Graham's assessment that Target was "reducing [Plaintiff's] work hours because of her performance and keeping up in the pace" was not based on "direct knowledge from Target and most probably relied on the claimant's mother." (R. 936) (citing R. 81 ("as per previous discussion with Target I was advised that they do not give out information."), and R. 651). Similarly, the ALJ accorded Dr. Kurylo's opinion "some weight, similar in weight to the opinion of Dr. Graham, who had similar findings." Id. (citing R. 624-31).

The ALJ considered the opinion of Ms. Ragar, the "Intake Coordinator/Case Manager at Communityworks, Inc.," but gave it no weight because she provided no treatment notes and no details regarding her relationship with Plaintiff. (R. 936). Ms. Porter provided an opinion which was also considered by the ALJ, but he accorded it little weight. Id. at 937. He did so because Ms. Porter provided no qualifications other than as a former "transition specialist for Shawnee Mission North High School," stating that although the district court in the prior case "referred to her having a Master's Degree in Special Education," that is not an "acceptable medical source." Id.[2] He noted that there is no record evidence documenting any treatment of Plaintiff by Ms. Porter, that she reveals a misunderstanding of the Social Security law, and that she provides no functional limitations--physical or mental--for Plaintiff. Id. Nonetheless, he accorded some weight to Ms. Porter's opinion that Plaintiff gets tired and has emotional issues dealing with others, as it is supported by other evidence. Id.

The ALJ noted that he gave little weight to global assessment of functioning (GAF) scores because they are subjective evaluations at a moment in time, are not designed for adjudicative determinations, and may indicate problems that do not relate to the ability to work. Id. He stated that Dr. Stiers's opinion is not particularly relevant because it was given before Plaintiff's 18th birthday, while she was still in high school. (R. 937). He noted that, while the limitations opined may have been true at that time,

---

[2] The court notes that Ms. Porter testified that she has a Master's Degree in Special Education at the hearing before the first ALJ in this case. (R. 65). Nevertheless, as the ALJ found, that is not an "acceptable medical source."

later findings reveal she does not have those limitations, she finished high school, completed vocational training, did some college work, and "worked up to full time hours at Target" since then. (R. 938). He accorded more weight to the opinions of Dr. Chiasson and Dr. Kurylo because they were more recent than Dr. Stiers's opinion and indicated she <u>could</u> work in a restricted environment limited to simple repetitive work.

The ALJ discounted Plaintiff's mother's testimony because her testimony that they needed Plaintiff's money to help pay the bills suggested potential secondary gain, because she is not qualified to make medical statements, because her reports of frequent anger outbursts and low coping skills at work are belied by Plaintiff's work at Target for eight years, and because they are not supported by the other record evidence. (R. 939). Moreover, he found that Plaintiff's mother's second and third reports conflicted with the more extreme limitations suggested in her first report. <u>Id.</u>

### C.    Analysis

As noted and demonstrated above, the ALJ made an extensive and particularly thorough examination and explanation of the opinion evidence in this case. Moreover, the court's review reveals that the reasons given by the ALJ for the weight accorded are supported by the record evidence. While it might be possible to weigh the opinions in the manner Plaintiff suggests they should be weighed, she does not demonstrate that the evidence requires that view. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's argument that the "ALJ failed to reflect the need for a low stress, low pressure job in the RFC and hypothetical to the VE" (Pl. Br. 33), is unavailing. The need for a low stress, low pressure job, while it is a limitation in an individual's capabilities, it does not in itself reflect functional limitations, but must be expressed in the RFC in terms of functional limitations. Here, the ALJ assessed Plaintiff with limitations to:

> no fast-paced assembly line or piece work types of job duties; to understand, remember, and perform only simple repetitive work instructions and tasks at an SVP 2 level; to have only occasional contact with coworkers, supervisors, and the general public; not to work with the general public as a primary job duty; not to do teamwork types of job duties; to work in a socially isolated type of work environment at moderate or office noise levels; not to work around flashing lights; and to have oral instructions only.

(R. 930). Plaintiff does not demonstrate that these limitations are insufficient to account for her need for low stress, low pressure work.

In her Reply Brief, Plaintiff argues that the cases cited by the Commissioner did not address low stress or low pressure, but stand only for the proposition that a limitation to unskilled work might account for deficits in concentration, persistence, or pace. (Reply 4). While Plaintiff is correct that the cases cited do not mention "stress," or

"pressure," and that the specific mental functional area at issue in those cases was maintaining concentration, persistence, or pace,[3] she misses the point of the Commissioner's argument. The point of the Commissioner's argument and of the cases cited is that a limitation in a broad area of mental functioning is an insufficient basis to evaluate an ALJ's consideration of a claimant's mental impairments. Rather, the impairments must be assessed on the basis of specific functional limitations in a claimant's mental abilities.

In Vigil v. Colvin, 805 F.3d 1199 (10th Cir. 2015), the ALJ found that the claimant had moderate difficulties in concentration, persistence, and pace, and assessed an RFC limitation to unskilled (SVP level 1 or 2) work. 805 F.3d at 1203. The claimant there argued that the ALJ's limitation did not "adequately account for his memory and concentration deficits." Id. The court explained:

> At the "more detailed" step four assessment of [Mr.] Vigil's RFC, the ALJ found some evidence indicating that [Mr.] Vigil had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks." (citing findings of impaired delayed recall, inability to spell in reverse, or recall the President's name). But, the ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that [Mr.] Vigil retain[ed] enough memory and concentration to perform at least simple tasks."

Vigil, 805 F.3d at 1203–04 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996), and quoting the ALJ's decision). The court concluded,

---

[3] As the court noted above, the Commissioner's assessment of mental impairments has changed since those cases were decided, but the current corresponding mental area is "Concentrate, persist, or maintain pace." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00E3.

Thus, the ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work. There may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations. See Chapo v. Astrue, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012) (recognizing that restrictions to unskilled jobs do not in all instances account for the effects of mental impairments). But in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace.

Id. at 1204.

In Smith v. Colvin, 821 F.3d 1264 (10th Cir. 2016), a doctor reviewed records and opined that the claimant was moderately limited in several mental abilities, and the claimant argued that the ALJ should have included each of those limitations in her RFC. 821 F.3d at 1268. The court however, noted that the doctor had concluded that the moderate limitations resulted in two functional limitations--that the claimant could perform only work of limited complexity, and could "manage social interactions that were not frequent or prolonged." Id. The ALJ, similarly, assessed the claimant with an inability to engage in face-to-face contact with the public, and the ability to engage in only simple, repetitive, and routine tasks. Id. at 1269. The court concluded that, "This approach is acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." Id., 821 F.3d at 1269 (citing Vigil, 805 F.3d at 1204). The other cases cited in the Commissioner's Brief are unpublished opinions by the Tenth Circuit to a similar effect as Vigil and Smith, and both specifically rely upon Vigil. Nelson v. Colvin, 655 F. App'x 626, 628-29 (10th Cir. July 12, 2016); Berumen v. Colvin, 640 F. App'x 763, 766 (10th Cir. Feb. 10, 2016).

Plaintiff next argues that it is insufficient for the ALJ to discount Dr. Graham's opinion that Plaintiff might need accommodation in hours of work because the evidence indicates Target does not give out information on employees, and Dr. Graham's assessment that Target was "reducing her work hours because of her performance and keeping up in the pace" was not based on "direct knowledge from Target and most probably relied on the claimant's mother." (R. 936). She argues, "[t]here is no substantial evidence Dr. Graham based his [sic][4] opinion on Plaintiff's mother's reports; that is sheer speculation on the ALJ's part." (Pl. Br. 34). However, the ALJ found that "Target does not give out information on employee performance" (R. 936), and that finding is supported by record evidence. He cited Exhibit 3A, page 5 which contains the Single Decision Maker's explanation that he was "[u]nable to get information from Target as per previous discussion with Target I was advised that they do not give out information." (R. 81). Therefore, the ALJ's finding is not "sheer speculation." Dr. Graham's report indicates that it was "written at the request of Mary Dettmer, adoptive mother of Maribeth," thereby suggesting that either Plaintiff or her mother was the source of Dr. Graham's information regarding alleged work accommodations at Target. In any case, the record reveals, as the ALJ found, that there "is no indication that Dr. Graham had direct knowledge from Target." (R. 936). Moreover, Dr. Graham's report suggests no other, and Plaintiff points to no other, source for the information. And, Plaintiff's suggestion that Dr. Graham's opinion regarding work accommodation is supported by

_____

[4] Dr. Graham is likely a woman, her first name is Leona. (R. 651).

other opinion evidence ignores that the ALJ considered and weighed the other opinion evidence, does not directly assert error in that weighing, and merely asks the court to reweigh that evidence and substitute its judgment for that of the ALJ, something which it may not do. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.")

Plaintiff argues that the ALJ did not consider the regulatory factors for considering opinion evidence but she does not point to a regulatory factor which was not considered and she does not explain what it is about the decision that suggests that the regulatory factors were not considered. But, the ALJ stated he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." Moreover, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). Those requirements are met here. Nothing more is required.

Finally, Plaintiff has shown no error in the ALJ's evaluation of Dr. Helling's and Dr. Stiers's opinions. As discussed above when considering Dr. Graham's opinion regarding low stress and low pressure work, the RFC assessed by the ALJ also adequately expresses the necessary structure required by Dr. Helling's opinion (if it is an

34

opinion)[5] that Plaintiff "[w]orks best if there is structure." (R. 482). As for Dr. Stiers's opinion, the ALJ gave it little weight because it is obsolete, as Plaintiff argues. But he went on to explain that Plaintiff "is now more than 30 years old," that since Dr. Stiers formulated his opinion she has completed high school, did some college work and completed vocational training, and "has worked up to full time hours at Target." (R. 938).

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 5, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

---

[5] As the Commissioner points out, Dr. Helling's "opinion" appears in the section of his treatment notes entitled "Behaviors, Symptoms, Data, Patient Complaint," and might be viewed as Plaintiff's report rather than Dr. Helling's opinion. (Comm'r Br. 7) (citing R. 482).